**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| Albertine B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 26 cv 50139 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Albertine B., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On August 6, 2021, Albertine B. ("Plaintiff") filed a Title II application for disability and disability insurance benefits, alleging a disability beginning on October 10, 2018. R. 15. The Social Security Administration denied her application initially on April 19, 2022, and upon reconsideration on June 13, 2024. *Id*. Plaintiff filed a written request for a hearing and on April 2, 2025, a telephonic hearing was held by Administrative Law Judge ("ALJ") Kevin Vodak where Plaintiff appeared and testified. *Id*. Plaintiff was represented by James Andrew Gesmer, an attorney, who appeared at the hearing. *Id.* Lee Knutson, an impartial vocational expert ("VE"), also appeared at the hearing. *Id*.

On May 06, 2025, the ALJ issued his decision denying Plaintiff's claim. R. 15-30. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [10], the Commissioner's response brief [13], and Plaintiff's reply [14].

### B. The ALJ's Decision

In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2020, the alleged onset date. R. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar radiculopathy; degenerative disc disease of the cervical spine; obesity; adjustment disorder; and posttraumatic stress disorder (20 C.F.R. 404.1520(c)). R. 18. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 19-22.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except for the following limitations: frequently reach overhead with the bilateral upper extremities; occasionally pushing and pulling with the right lower extremity; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; never working at unprotected heights; tolerating occasional exposure to vibration; tolerating no more than a moderate level of noise as defined in the Selected Characteristics of Occupations (SCO); and due to moderate limitations in concentration, persistence or pace, the claimant is restricted to understanding, remembering, and carrying out no more than simple instructions. R. 22. At step four, the ALJ found that Plaintiff had no past relevant work. R. 28. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since October 10, 2018. R. 29.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). " Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions

that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id.* Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ erred in: (1) evaluating the opinion evidence; and (2) evaluating Plaintiff's subjective symptoms. The Court finds that the ALJ adequately supported his evaluation of the opinion evidence and that his subjective symptoms analysis was not patently wrong. Accordingly, the Court affirms the Commissioner's decision.

### Medical Opinions

Plaintiff contends that the ALJ erred in evaluating the medical opinion of Dr. Gustave Sison. Specifically, she contends that the ALJ did not properly consider Dr. Sison's observations and failed to explain why Dr. Sison's abnormal findings were overcome by other normal findings in the record. Plaintiff further asserts that the ALJ relied on medical records that were overinclusive and unsupportive of his conclusions as to Dr. Sison's opinion. Finally, Plaintiff contends that the ALJ did not evaluate Dr. Sison's opinion for consistency with those of Drs. Atkins and Jordan and did not rely on a single doctor's opinion. The Court finds that the ALJ reasonably evaluated the medical opinions in accordance with 20 C.F.R. § 404.1520c.

When assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how they considered these two factors in their determination or decision. *Patrice W. v. Kijakazi*, No. 20 CV 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. §404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and nonmedical sources in the claim." *Id.* "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally

articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell*, 72 F.4th at 816 (internal quotation marks and citation omitted).

On April 13, 2022, Agency consultative examiner Gustave F. Sison, Ph.D., completed a comprehensive mental status evaluation of Plaintiff. As the ALJ noted, Dr. Sison observed that Plaintiff had a good ability to understand instructions, poor ability to remember instructions, a fair ability to carry out instructions, poor ability to perform routine and repetitive tasks, fair to poor ability to respond appropriately to supervision, poor ability to interact appropriately with coworkers, and poor ability to maintain attention and concentration sufficient to function consistently. R. 27. The ALJ evaluated this record alongside Plaintiff's longitudinal treatment record, and clinical observations of the internal medicine consultative examiner, who found no apparent deficits in mental function.

Plaintiff argues that the ALJ did not fairly weigh Dr. Sison's findings in support of disability against other examination findings in the record. Specifically, she contends that the ALJ did not explain why he found Dr. Sison's opinion unpersuasive, and as a result, failed to draw a logical and accurate bridge from the evidence to his conclusions. The ALJ noted Dr. Sison's mixed observations and sought to resolve what the ALJ viewed as an internal inconsistency between Dr. Sison's finding of a poor ability to remember instructions and Dr. Sison's finding that Plaintiff generally had good recent recall, fair remote recall and fair-to-good immediate recall. He also evaluated Dr. Sison's opinion alongside records from other medical sources, including the longitudinal treatment record, and mental health observations from the internal medicine consultative examiner. Analyzing both evidence from medical sources and highlighting both negative and positive findings, the ALJ noted Plaintiff's lack of apparent deficits in mental function, and, among other findings, repeated clinical observation of generally normal memory, thought processes, and other cognitive abilities. R. 27-28. Specifically, the ALJ found the opinion not supported by and inconsistent with clinical observations. The Court finds that the ALJ compared Dr. Sison's findings to other evidence in the record for consistency and supportability, and that the ALJ thoroughly evaluated Dr. Sison's opinion with Plaintiff's record at large.

Plaintiff also contends that the records the ALJ evaluated regarding Plaintiff's mental health status were overinclusive.[1] Specifically, she argues that the ALJ cited several records that did not relate to mental health treatment, and as a result, did not support the ALJ's mental status assessment. Relatedly, Plaintiff asserts that the ALJ's reliance on the internal medicine examination in his mental health status evaluation was misplaced. Plaintiff notes that the "physical medicine specialist was tasked with performing an internal medicine examination and not tasked with performing a robust mental health examination, the purpose of Dr. Sison's visit." [10, at p. 5]. However, while the internal medicine examiner's work focused on Plaintiff's physical capabilities, the internal medicine examiner also included some observations regarding plaintiff's mental status. Notably, the ALJ considered the examiner's observation that "[t]he patient exhibits normal understanding, cooperation, concentration, and attention. Memory is normal. The patient is oriented x4. There is no visible nervousness or depressed mood." R. 1065. Additionally, the ALJ evaluated

[1] Plaintiff additionally argues that the ALJ did not adequately consider this list of records in evaluating her physical symptoms. Given the significant overlap between this argument and Plaintiff's contention that the ALJ failed to evaluate her subjective symptom allegations, the Court addresses it subsequently with respect to that argument.

these records alongside other evidence in the record, including Dr. Sison's opinion, and Plaintiff's treatment records as a whole. Regarding Plaintiff's medical records, the ALJ observed, "repeated clinical observation of generally normal memory, orientation, concentration, thought process, thought content, insight, and judgment, despite instances of reduced insight and judgement or attention span and concentration." R. 28. More importantly, Plaintiff is asking the Court to reweigh evidence that the ALJ has already considered, which this Court will not do. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

While the internal medicine consultative examiner's mental status assessment was more limited than the psychological consultative examination, a feature the ALJ acknowledged, the examiner nevertheless included records that reflected observations regarding Plaintiff's mental status. The Court finds that the ALJ adequately analyzed and articulated his assessments of Plaintiff's records. The ALJ's record review was detailed and comprehensive.

Plaintiff's final contention regarding the ALJ's analysis of the medical opinions is that he failed to evaluate Dr. Sison's opinions for consistency with other medical opinions or to adopt the opinion of any one doctor. The medical opinions in the record include that of state agency psychologist Dr. David Atkins, Ph.D., who conducted the initial psychological determination. Dr. Atkins opined that Plaintiff could understand and remember simple and routine one-to-two-step instructions without difficulty, carry out simple, repetitive tasks, and cope with the demands of a familiar, standardized work environment with minimal variation. The ALJ found this opinion to be partially persuasive, as it was somewhat supported by Plaintiff's abilities, treatment records, a psychological consultative examination, and clinical observations. R. 26-27. The ALJ noted, however, that there were some inconsistencies between Dr. Atkins' opinion and the clinical observations of normal functioning by the other consultative examiner. R. 26. As the Commissioner notes, the ALJ's RFC was nearly a match to Dr. Atkins' assessment, breaking only on allowing one-to-two step tasks in contrast to the ALJ's restriction to simple tasks.

On reconsideration, State agency psychologist Dr. Marilyn Jordan Ph.D. found that the claimant had moderate limitations in understanding and remembering detailed instructions and could perform with routine but superficial interpersonal contact, such as a grocery checker, and could perform routine work with little supervision but required detailed supervision for non-routine work. R. 27. The ALJ found this opinion partially persuasive, finding that Dr. Jordan's assessment was "broadly supported" as to some abilities and not supported as to other abilities and consistent with some records and clinical observations, and inconsistent with others. *Id.*

The ALJ's analysis of the medical opinions was comprehensive and included consideration of the opinions alongside evidence from other medical sources. The ALJ explained why he did not go as far as Dr. Atkins' one-to-two step instructions limitation, noting that it was not entirely supported by treatment records and examinations. R. 26. Additionally, he explained why he departed from Dr. Jordan's social limitations, noting a lack of clinical observations supporting this finding. R. 27. Finally, the ALJ noted that Plaintiff herself reported no difficulty interacting with others in function reports, despite testifying to the contrary at the hearing. R. 20. The ALJ properly articulated sufficient reasons for his assessment of the expert opinions assessments of Drs. Atkins and Jordan. *Warnell*, 97 F.4th at 1053 (citations omitted) ("Time and time again, we have emphasized the social-security adjudicators are subject to only the most minimal of articulation

requirements.”). (internal quotation marks and citation omitted).

Plaintiff argues that the ALJ was required to do more by weighing the expert opinions against each other and by choosing one of the expert opinions to adopt. As previously discussed, The ALJ must evaluate the consistency of the medical opinions with evidence from medical sources and non-medical sources in the claim. 20 C.F.R. § 404.1520c. The ALJ analyzed Plaintiff's longitudinal treatment record and the internal medicine consultative exam, which were generated by medical sources,[2] alongside Dr. Sison's opinion. Plaintiff cites no support for the argument that the consistency analysis requires the ALJ to weigh the medical opinions in the record against each other. Although Plaintiff may disagree with how the ALJ weighed the medical evidence, this Court will not “reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.” *Gedatus*, 994 F.3d at 900.

Regarding Plaintiff's contention that the ALJ erred by failing to adopt the opinion of any one doctor, the Court notes that “[i]n general, ‘the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians.’” *Whitehead v. Saul*, 841 F. App'x. 976, 982 (7th Cir. 2020) (quoting *Schmidt*, 496 F.3d at 845). “This is because the RFC determination ‘is a legal – and not a medical – decision that is exclusively within the ALJ's authority to make.'" *John S. v. Bisignano*, No. 23 C 2041, 2025 WL 1505405, at *3 (N.D. Ill. May 27, 2025) (quoting *Michael B. v. Berryhill*, No. 18 C 236, 2019 WL 2269962, at *6) (N.D. Ill May 28, 2019)). Ultimately, the ALJ was entitled to consider the entire record and assess Plaintiff's RFC based on substantial evidence in the record. *See Schmidt*, 496 F.3d at 845. Here, the ALJ faced a record with conflicting opinions, resolved those inconsistencies, and created an RFC using aspects of the opinions available that was supported by substantial evidence. Accordingly, the Court finds no error.

**Subjective Symptoms**

Finally, Plaintiff asserts that the ALJ failed to properly evaluate and account for Plaintiff's subjective symptoms in the RFC. The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). “As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong.” *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (citation omitted); *see also Senora W. v. O'Malley*, No. 21 CV 4411, 2024 WL 4346613, at *4 (N.D. Ill. Sept. 30, 2024) (quoting *Wilder v. Kijakazi*, 22 F.4th 644, 65) (The Court will uphold an ALJ's symptom analysis unless that determination is “patently wrong.”). An ALJ's assessment is patently wrong if the decision lacks explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598,

[2] The Social Security Administration defines “medical source” under 20 C.F.R. § 404.1502(d) as “an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law”. 20 C.F.R. § 404.1502(d).

603 (7th Cir. 2017). "Not all of the ALJ's reasons must be valid [in a subjective symptom analysis] as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

Plaintiff contends that the ALJ failed to properly analyze Plaintiff's symptoms according to SSR 16-3p. Specifically, Plaintiff contends that the ALJ did not discuss any of the required factors, some of which Plaintiff argues were pertinent to the case. As stated above, under SSR 16-3p, in evaluating the intensity, persistence, and limiting effects of a Plaintiff's symptoms, an ALJ is instructed to consider various factors, including a Plaintiff's daily activities and medication use. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Plaintiff's medical complaints include chest pain, syncopal events, inability to walk even short distances, and shortness of breath, right lower extremity swelling and tenderness, right knee with decreased and painful range of motion, antalgic gait, positive Phalen's sign on the right wrists, positive Tinel's sign in both wrists, reduced and painful cervical range of motion, severe tenderness in the lumbar spine, positive straight leg raise on the right, limited range of motion in the right shoulder, and positive empty can test impingement sign in the right shoulder. [10, at p. 13]. Plaintiff also notes a lumbar MRI, which revealed severe stenosis and disc extrusion encroaching on the nerve root. *Id*.

The ALJ documented Plaintiff's testimony that she could lift 13 to 14 pounds and stand or walk for up to ten minutes due to lower back pain radiating down Plaintiff's right extremity. R. 23. The ALJ also acknowledged Plaintiff's allegations of stiffness and aching in the neck affecting her reaching, particularly on the right side, and looking up. *Id*. The ALJ further noted that Plaintiff testified to additional challenges, including difficulty concentrating and remembering necessary work information, panic attacks associated with stress and anxiety, anxiety exacerbated by arguments, and an aversion to loud noises and fast-moving things. *Id*. The ALJ noted that Plaintiff testified that she could complete personal care and household tasks, cook, and shop independently, but generally avoids crowds, and may forget what channel she was watching on television. *Id*.

The ALJ continued his analysis with an extensive and detailed examination of Plaintiff's record. Specifically, the ALJ analyzed Plaintiff's diagnostic radiographic imaging studies of the cervical spine, diagnostic radiographic imaging studies of the lumbar, which showed a range from mild to moderate, and severe results. R. 23. The ALJ also analyzed Plaintiff's treatment records, which reflected tenderness and reduced range of motion in the cervical and lumbar spine, normal shoulder and knee strength and range of motion, as well as normal heel and toe walking, and squatting. *Id*. Further, the ALJ analyzed these clinical observations alongside Plaintiff's treatment records, noting that medical providers' notes almost universally reflected normal, unassisted gait with limited exceptions. R. 23-24. The ALJ concluded that "the lion's share of their clinical observations reflect generally normal physical functioning, without notable deficits in range of motion, strength, or neurological function throughout most records over the period of issue". R.24.

The ALJ properly based his credibility findings on a conclusion that that objective medical record did not support the extreme limitations that Plaintiff suggests in her arguments. "So long as the ALJ issues a reasoned explanation, we 'will not overturn an ALJ's credibility determination unless it is patently wrong.' Patently wrong is a high threshold – 'only when the ALJ's determination lacks any explanation or support – will we declare it to be patently wrong and deserving of reversal.'" *Ray v. Saul*, 861 F. App'x. 102, 107 (7th Cir. 2021) (quoting *Elder*, 529 F.3d at 413-14). Here, the ALJ appropriately examined Plaintiff's stated symptoms and their

consistency with the record, analyzing Plaintiff's testimony alongside reports from treating medical providers, testing results, clinical observations, and results from the internal medicine consultative examiner. The ALJ credited Plaintiff's symptoms to the extent they were supported by the record, which resulted in an RFC that limited Plaintiff to light work and only occasional balancing, stooping, kneeling, crouching, and crawling. R. 22. Ultimately, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 23. To the extent Plaintiff maintains that the record supported different findings, the Court again emphasizes that it does not "reweigh the evidence." *Gedatus*, 994 F.3d at 900. The Court finds that the ALJ sufficiently followed the guidelines in SSR 16-3p and SSR 96-8p, evaluating Plaintiff's subjective symptoms as a whole by adhering to the two-step process and considering various types of evidence as required. Accordingly, the Court finds the ALJ's subjective evaluation fully explained and supported and not patently wrong.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [10] is denied and the Commissioner's motion for summary judgment [13] is granted.

Date: 11/25/2026 ENTER:

Margaret J. Schneider
United States Magistrate